UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL ESPINOZA and VICTOR ROSADO,

                         Plaintiffs,

           -against-

PORT AUTHORITY OF NY & NJ,

                         Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/2/2022___

19 Civ. 258 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs Daniel Espinoza and Victor Rosado bring this action against the Port Authority of New York and New Jersey (the "Port Authority") alleging employment discrimination on the basis of (1) national origin and ethnicity, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290, *et seq*, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; (2) ethnicity in violation of  42 U.S.C. § 1981; and (3) disability and retaliation under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and the NYCHRL.  *See* Compl. ¶¶ 42–116, ECF No. 1.  The Port Authority moves for summary judgment.  Def. Mot., ECF No. 81.  For the reasons stated below, the motion is GRANTED.

## BACKGROUND[1]

Plaintiffs are of Hispanic[2] origin.  Pls. 56.1 ¶ 1, ECF No. 87.  They joined the Port Authority's Public Safety Department in 1999 and 2008, respectively.  Def. 56.1 ¶¶ 7–8, ECF

---

[1] The Court considers admitted for purposes of the motion any paragraph that is not specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.  Local Civ. R. 56.1(c).  Where there are no citations, or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).
[2] The Court adopts the term "Hispanic" because this is the identifier used by Plaintiffs.  *See* Pls. 56.1 ¶ 1.

No. 83.  Espinoza began working at the George Washington Bridge (the "Bridge") police command in 2004, and Rosado started there in 2015.  Def. 56.1 ¶¶ 15, 25.

On October 26, 2016, Plaintiffs and seven other officers assigned to Tour One at the Bridge filed an internal hostile work environment complaint with the Port Authority's Office of Equal Employment Opportunity Compliance, Diversity, and Inclusion (the "EEO"), stating that Lieutenant Vincent DeSimone had made racially disparaging comments about African-Americans and Hispanics.  Def. 56.1 ¶¶ 50, 51.  The officers claimed that DeSimone stated that Puerto Ricans carry knives; and referred to the Bridge as the "Jorge Washington Bridge," and to Tour One as the "Hispo Squad." *Id.* ¶¶ 52–54.  The officers further alleged that DeSimone "afford[ed] white officers . . . preferential treatment and assignments."  ECF No. 82-34, at 2.  The EEO investigated the complaint, and concluded that DeSimone's behavior violated the Port Authority's policies against discrimination.  Def. 56.1 ¶¶ 55, 57.  The EEO recommended that DeSimone be removed from the Bridge and "undergo intensive training."  *Id.*  As a result, on March 26, 2017, DeSimone was transferred from the Bridge for creating a "hostile work environment," ECF No. 82–37, and he has not been permitted to work at the facility since then, Def. 56.1 ¶ 60.

On December 6, 2017, Espinoza was transferred to the Port Authority Bus Terminal ("PABT") command after being found off-post on four occasions, although Espinoza states that this transfer was in retaliation for filing the internal EEO complaint against DeSimone.  *Id.* ¶ 16.  Espinoza conceded at his deposition that he had been off-post.  Espinoza Tr. at 127–49, ECF No. 82-6.  On December 6, 2017, the Port Authority Police Benevolent Association, Inc., (the "PBA"), which represents all Port Authority police officers including Plaintiffs, filed a grievance against the Port Authority, claiming it inappropriately transferred Espinoza, and demanded

arbitration of the grievance.  Def. 56.1 ¶ 18.  The grievance was resolved with Espinoza receiving a disciplinary penalty in the form of his transfer to the PABT, and a stipulation that he could not be assigned to the Bridge.  ECF No. 82-14 at 5.  In March 2018, while on duty at Newark Airport, Espinoza "forgot what [his] post covered," and was directing traffic on a different post from his assigned location.  Espinoza Tr. at 116–20.  As a result, Espinoza was again brought up on charges of being off-post.  *Id.*  Because these charges remain pending, *id.* at 116, Espinoza "can't get [certain] posts" and is "not allowed to get trained" for specialized positions, *id.* at 248.

From the date the EEO complaint was submitted until DeSimone was transferred out of the Bridge in March 2017, DeSimone has not directed any discriminatory behavior at Rosado. *See* Def. 56.1 ¶ 64; *see also* Rosado Tr. at 125, 183–84, ECF No. 82-5.  Following the filing of the EEO complaint, on one occasion, DeSimone "wrote up" Espinoza for being off-post, though again, Espinoza acknowledged during his deposition that he was, in fact, off-post.  Espinoza Tr. at 183–87.  In contrast to prior instances where Espinoza was off-post, in this instance he did not recall if he was served with formal charges after DeSimone wrote him up.  *Id.* at 185.  Espinoza also stated that DeSimone "tone[d] . . . down" his behavior after the EEO complaint was filed. *Id*. at 196.  Other than occasionally giving Espinoza "dirty looks," DeSimone has not acted in a discriminatory manner or made inappropriate comments to Espinoza since Espinoza began working at PABT.  *Id*. at 193, 245–47.

In December 2017, Rosado privately stated to his supervising officers that he was being "targeted by certain police officers based on information written in [Rosado's] memo book" and that he was experiencing health consequences related to diabetes.  Def. 56.1 ¶¶ 26, 30.  Rosado also said he was concerned about being transferred to John F. Kennedy Airport ("JFK") against

his wishes, because of this targeting.  *Id.* ¶ 30.  In December 2017, Rosado suffered a "mental breakdown," which he attributes to his treatment at work, specifically being called a "rat" and being ignored by other officers, though he could not recall which officers had behaved in this manner.  Rosado Tr. 191–92.  Rosado took sick leave commencing on December 11, 2017, and never returned to work.  Def. 56.1 ¶ 34.

In May 2018, Rosado submitted a form stating that his absence was attributable to work-related stress stemming from his supervisors' mistreatment of him because of his "involvement in an EEOC investigation."[3]  *Id.* ¶ 36.  In June 2018, Rosado began making efforts to return to work, and he was evaluated by Alexander S. Bardey, M.D., a forensic psychiatrist.  Rosado Tr. at 206.  In July 2018, Rosado submitted Dr. Bardey's evaluation to Doris Francis, a representative of the Port Authority's Office of Medical Services ("OMS").   Rosado Tr. at 211–12.  The evaluation stated that based on Dr. Bardey's examination, Rosado was "no longer fit to be a police officer due to his underlying medical/psychiatric conditions," including the fact that he was "vulnerable to . . . delirium and psychotic symptoms," which could be exacerbated by his duties as a police officer.  Def. 56.1 ¶ 39.

In a July 18, 2018 memorandum, OMS stated that Rosado was "no longer medically able to perform the full duties" of a police officer.  ECF No. 82-23.  The memorandum indicated that Human Resources ("HR") would contact Rosado to discuss his options, including "engaging in an interactive review process" to explore reasonable accommodations or alternative placements. *Id.*  By letter dated July 26, 2018, an HR representative advised Rosado that he could apply for disability retirement or participate in the interactive review process to explore reasonable accommodations.  ECF No. 82-25.  Rosado did not respond to the letter, or otherwise contact

---

[3] It is not clear if this is the internal EEO investigation of DeSimone discussed *supra* on p. 2 or a separate investigation conducted by the federal Equal Employment Opportunity Commission ("EEOC").

HR.  Def. 56.1 ¶ 42; Rosado Tr. at 214–16.  Instead, in July 2018, Rosado applied for disability

benefits.  Rosado Tr. at 225.  In December 2018, the Port Authority notified Rosado that it was

seeking his removal as he would "never be fit for duty as a police officer."  Def. 56.1 ¶ 44.

Although Rosado initially requested a hearing concerning his removal, by an agreement dated

September 2019, Rosado waived the hearing, and acknowledged he planned to apply for

disability retirement.  *Id.* ¶¶ 45, 46.

Plaintiffs have not worked at the Bridge since December 2017.  *Id.* ¶¶ 16, 18.  They filed

charges of discrimination with the EEOC on September 27, 2018.  ECF Nos. 82-41, 82-42.  The

charges state that Plaintiffs experienced discrimination and retaliation by the Port Authority on

the basis of race, ethnicity, and color, in violation of Title VII, the NYSHRL, and the NYCHRL.

ECF Nos. 82-41, 82-42.

## DISCUSSION

I.  <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine

dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1);

*Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If

the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may

also satisfy its own summary judgment burden by demonstrating that the adverse party cannot

produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  In doing so, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted), because "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  In deciding the motion, the Court views the record in the light most favorable to the nonmoving party.  *Koch*, 287 F.3d at 165.

The Court must be "cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quotation marks and citation omitted).  It must, therefore, "carefully scrutinize[]" the nonmovant's affidavits and depositions for "circumstantial proof which, if believed, would show discrimination."  *Id.*  That said, summary judgment is warranted if the opposing party "relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct."  *Figueroa v. N.Y.C. Health and Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007) (quotation marks and citation omitted).  To defeat summary judgment, the opposing party must set forth "concrete evidence from which a reasonable juror could return a verdict in [her] favor."  *Anderson*, 477 U.S. at 256.

II.   <u>Procedural Issues</u>

A.  Abandoned Claims

Plaintiffs have withdrawn their claims under the NYSHRL and the NYCHRL.  Def.

Mem. at 7–8, ECF No. 84.  Accordingly, the Port Authority's motion for summary judgment on

these claims is GRANTED.

B.  Plaintiffs' Declarations

When ruling on a motion for summary judgment, the Court need only consider evidence

that would otherwise be admissible.  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*,

582 F.3d 244, 264 (2d Cir. 2009).  Under 28 U.S.C. § 1746, an unsworn declaration or

affirmation constitutes admissible evidence "only when it is expressly subscribed as true under

penalty of perjury."  *Hughes v. Lebron*, No. 14 Civ. 9479, 2016 WL 5107030, at *8 (S.D.N.Y.

Sept. 19, 2016) (quotation marks, emphasis, and citation omitted); *see also Stair v. Calhoun*, No.

12 Civ. 6121, 2015 WL 1966345, at *1 (E.D.N.Y. May 1, 2015).  The declarations submitted by

Plaintiffs to substantiate their 56.1 statement do not state that they are true "under penalty of

perjury."  *See, e.g.*, ECF No. 85-2 ("I, Daniel Espinoza, do hereby declare under 28 U.S.C. Sec.

1746 . . . .").  Moreover, because Plaintiffs are represented by experienced counsel, their failure

to submit declarations that comply with the statutory requirements cannot be overlooked, as

courts in this Circuit have sometimes chosen to do in the case of plaintiffs proceeding *pro se*.

*E.g. Davis v. Grant*, No. 15 Civ. 5359, 2019 WL 498277, at *1 n.2 (S.D.N.Y. Feb. 8, 2019).

Accordingly, these declarations are of "no evidentiary value on summary judgment.  Indeed,

[they] may not be considered on summary judgment."  *Aersale Inc. v. Ibrahim*, No. 13 Civ. 713,

2013 WL 5366384 at *4 (S.D.N.Y. Sept. 25, 2013).  In determining whether a material issue of

fact exists, the Court shall not consider the unsworn declarations of Espinoza, Rosado, Manuel

Cuprill, Edwin Berdecia, Robert Cruz, Constantine Mokanos, or Michael Ortiz, ECF Nos. 85-2–
85-8, or statements within Plaintiffs' Rule 56.1 statement that cite such declarations.

C.  Plaintiffs' 56.1 Statements

The Port Authority argues that each assertion in Plaintiffs' counter-statement of
undisputed facts pursuant to Local Rule 56.1 should be disregarded because "they are based on
inadmissible declarations," and contain statements made without personal knowledge.  ECF No.
91 at 1.  Local Rule 56.1 requires a party moving for summary judgment to submit "a separate,
short and concise statement" setting forth material facts as to which there is no genuine issue to
be tried.  Local Civ. R. 56.1(a).  A party opposing summary judgment must respond with a
statement of facts as to which a triable issue remains.  *Id.* at 56.1(b).  "Each numbered paragraph
in the statement of material facts . . . will be deemed to be admitted . . . unless specifically
controverted by a correspondingly numbered paragraph in the statement required to be served by
the opposing party."  *Id.* at 56.1(c).  Further, "[e]ach statement by the movant or
opponent . . . including each statement controverting any statement of material fact, must be
followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ.
P. 56(c)."  *Id.* at 56.1(d).

A district court has "broad discretion to determine whether to overlook a party's failure to
comply with local court rules" and may "opt to conduct an assiduous review of the record."
*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations and quotation marks
omitted).  The Court will do so here.  However, when "objections are unsupported by the record,
they are conclusory and cannot create a genuine dispute of material fact."  *Mortimer v. Wilson*,
No. 15 Civ. 7186, 2020 WL 3791892, at *6 (S.D.N.Y. July 7, 2020). Therefore, the Court will

rely only on those statements that are free from these defects and supported by admissible evidence in the record.  *See id*.

### D.  Time Bar

To claim a violation under Title VII, a claimant must file administrative charges with the EEOC within 180 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1).  "A claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct."  *Dickens Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017).

The Port Authority, as a bi-state entity, is not subject to the jurisdiction of state or local human rights agencies in either New Jersey or New York.  *Dezaio v. Port Auth. of N.Y. and N.J.*, 205 F.3d 62, 64–65 (2d Cir. 2000).  Thus, claimants bringing employment discrimination claims against it are subject to the 180-day filing limitation, rather than the more generous 300-day limitation afforded to claimants whose claims are under the jurisdiction of a state or local agency.  *See e.g. id.*; *Hip Heightened Independence and Progress, Inc. v. Port Auth. of N.Y. and N.J.*, 693 F.3d 345, 358 (3d Cir. 2012).  Here, Plaintiffs filed their charges of discrimination with the EEOC on September 27, 2018.  ECF Nos. 82-41, 82-42.  Accordingly, Defendants argue any claims regarding alleged discriminatory acts occurring prior to March 31, 2018 are time barred.  Def. Mem. at 6–7.  Plaintiffs contend, however, that such acts occurring before the operative date are actionable under the continuing violations doctrine.  Pls. Opp. at 4–5.  The Court disagrees.

### 1.  Discrimination and Retaliation Claims

To invoke the continuing violations doctrine on Plaintiffs' claims of discrimination and retaliation based on national origin and ethnicity, they must allege "both the existence of an

ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Beharry v. City of New York*, No. 18 Civ. 2042, 2019 WL 634652, at *2 (S.D.N.Y. Feb. 14, 2019) (citation omitted).  And "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.* (citation omitted).

 To the extent Plaintiffs' Title VII claims for discrimination and retaliation are based on discrete acts, including transfers to less desirable positions and postings, being written up on allegedly false charges, and being denied training and promotions, Pls. Opp. at 8, these "discrete acts" do not form the basis for a continuing violation claim, as each "discrete act" begins the statute of limitations anew.  *Humphreys v. N.Y.C. Health & Hosps. Corp.*, No. 16 Civ. 9707, 2018 WL 3849836 at *4 (S.D.N.Y. Aug. 10, 2018) (collecting cases).  Plaintiffs have stated in deposition testimony that DeSimone has not behaved discriminatorily towards them at least since he was transferred out of the Bridge in March 2017, and Plaintiffs have not worked at the Bridge since December 2017.  Rosado Tr. at 125, 183–84; Espinoza Tr. at 193, 245–48.  The Court concludes, therefore, that "discrete acts" of discrimination and retaliation did not occur within the applicable limitations period.  Def. 56.1 ¶ 64.  Moreover, Plaintiffs do not allege that DeSimone or other supervisors' allegedly discriminatory conduct was pursuant to a policy of discrimination, s*ee generally* Compl.

 Plaintiffs' claims premised on actions prior to March 31, 2018 are, therefore, time barred, and they cannot invoke the continuing violations exception to their claims of discrimination and retaliation under Title VII.  This includes claims arising from DeSimone's alleged harassment of, and discrimination against Plaintiffs, which Plaintiffs were aware of at least as early as October 2016, when they filed their internal complaint, Compl. ¶¶ 19–22; retaliation Plaintiffs

experienced after filing their internal EEO complaint that took place before the operative date;
and claims that Plaintiffs were "unfairly targeted and disciplined or involuntarily transferred,"
Compl. ¶ 27, to the extent this refers to Espinoza's "write-ups" for being off-post in late 2017,
and his subsequent transfer from the Bridge in December 2017, Def. 56.1 ¶¶ 16–17, and to
Rosado's conversation with supervisors about a transfer against his wishes to JFK in December
2017, Def. 56.1 ¶¶ 26–33.  Similarly, because both Plaintiffs left the Bridge in December 2017,
any claims stemming from DeSimone or other supervisors' alleged conduct at the Bridge are
time barred, including claims that supervisors at the Bridge gave preferential treatment and
assignments to white officers, or that other supervisors made derogatory comments about a
"white shirt mafia."  *See e.g.* Espinoza Tr. 153–54.

     Construing the record in the light most favorable to Plaintiffs, the only remaining factual
allegations supporting their Title VII discrimination and retaliation claims are (1) that Espinoza
was written up in May 2018 for being off-post while working at Newark Airport and prohibited
from attending trainings and taking certain positions because of these pending charges, *id*. at 81,
116; and (2) Rosado's complaints of the discrimination and retaliation he experienced after
March 31, 2018, in connection with trying to obtain a "reasonable accommodation" for his
mental illness and physical limitations, to the extent such allegations support a claim for
ethnicity and national origin discrimination, rather than disability discrimination under the
ADA,[4] Compl. ¶¶ 35–40.  The Court shall address these allegations on the merits.

---

[4] Rosado also raises several new claims in his summary judgment briefing for the first time, including that Port Authority officers showed up at his home unannounced, that he was denied access to his email and kiosk, and that he was written up when he attempted to regain access. Pls. Opp. at 6–7.  Aside from the fact that the only basis for these claims is Rosado's unsworn declaration, which the Court need not consider, the Court shall not address allegations raised for the first time in summary judgment briefing.  *See Avilan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012).

2.   Hostile Work Environment

Plaintiffs' hostile work environment claim is analyzed separately under the continuing violations doctrine.  Hostile work environment claims are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  Provided that any one act contributing to the claim occurs within the limitations period, the court may consider the entire time period of the hostile environment for purposes of determining liability, even if some component acts would individually be time barred.  *Id.*  In determining the scope and time period of the hostile work environment, however, the Court must determine "whether the acts about which an employee complains are part of the same actionable hostile work environment practice," and if so, whether any of those acts fall within the statutory time period.  *Id.* at 120.

Plaintiffs claim that they experienced "discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive" to alter the conditions of their work environment. Compl. ¶¶ 70–71.  The complaint describes instances when Plaintiffs were intimidated or insulted on the basis of their national origin and ethnicity, *see, e.g.*, Compl. ¶¶ 21–22, but Plaintiffs do not plead or prove that these incidents took place within the limitations period.  *See Lee v. Overseas Shipholding Grp, Inc.*, No. 00 Civ. 9628, 2001 WL 849747, at *5 (S.D.N.Y. Jul. 30, 2001).  And, both Plaintiffs have stated in deposition testimony that after DeSimone's transfer from the Bridge in December 2017, he did not direct any discriminatory behavior or comments towards them.  Def. 56.1 ¶ 64; Rosado Tr. at 125, 184; Espinoza Tr. at 193, 245–47. The only factual allegations that survive the limitations period—the May 2018 disciplinary action imposed on Espinoza for being off-post at Newark Airport, and Rosado's June 2018

efforts to obtain reasonable accommodations—do not involve DeSimone, [5] and did not take

place at the Bridge.  In addition, the nature of these allegations is distinct from the race-based

intimidation and insults Plaintiffs claim to have suffered outside the limitations period.  These

events, therefore, cannot be construed as part of the same actionable hostile work environment.

*See Little v. Nat'l Broadcasting Co., Inc.*, 210 F. Supp. 2d 330, 366 (S.D.N.Y. 2002) (finding

that allegations involving "different co-workers and supervisors, in different time periods, and

[in] different [departments]" do not constitute a single actionable "hostile work environment.").

The Court concludes, therefore, that Plaintiffs' hostile work environment claim is time barred,

and the Port Authority's motion for summary judgment on this claim is GRANTED.

### E.   Administrative Exhaustion

The Port Authority asserts that Rosado's claim for discrimination and retaliation in

violation of the ADA is procedurally defective because Rosado's EEOC charge was limited to

raising discrimination claims based on race, ethnicity, and color, and did not address

discrimination on the basis of disability or violations under the ADA.  Def. Mem. 8–10.

Plaintiffs argue that (1) the Port Authority failed to raise the defective ADA claim as an

affirmative defense, and have therefore waived it; and (2) Rosado's ADA cause of action should

be construed as "reasonably related" to his claims of racial and ethnic discrimination advanced in

---

[5] Plaintiffs' only factual allegations of misconduct by DeSimone within the limitations period are based on Espinoza's unsworn, inadmissible declarations.  Specifically, Espinoza states that DeSimone "always gives him a menacing look" when DeSimone comes to Espinoza's current posting, Espinoza Decl. ¶ 19, and that on one occasion in October 2021, when Espinoza arrived late at work, his supervisor told him he had been written up at DeSimone's order.  Espinoza Supp. Aff. ¶ 7, ECF No. 92-1.  As inadmissible evidence, the Court need not determine whether the claims in these declarations give rise to genuine issues of material fact, in light of Espinoza's admissible deposition testimony that DeSimone has not taken any discriminatory actions or made inappropriate comments to him since his transfer from the Bridge.  *See supra* at 7–8.  Similarly, that DeSimone directed another supervisor to write Espinoza up when he admittedly arrived late at work were raised for the first time on summary judgment, and shall not be considered by the Court.  *Avilan*, 483 F. App'x at 639.

his EEOC charge, because "loose pleading" before the EEOC is permissible.  Pls. Opp. at 5.  The Court disagrees.

As with claims under Title VII, litigants asserting discrimination claims under the ADA must first file a charge of discrimination with the EEOC.  *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016).  Failure to exhaust administrative remedies is an affirmative defense.  *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).  In its answer to the complaint, the Port Authority timely raised Plaintiffs' failure to administratively exhaust Rosado's ADA claim.  ECF No. 11, at 13.

The Second Circuit has recognized that unexhausted claims that were not asserted before the EEOC may be raised in a subsequent court action "if they were 'reasonably related' to those that were filed with the agency."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (citation omitted).  The purpose of administrative exhaustion is to give the EEOC an opportunity "to investigate, mediate, and . . . take remedial action to encourage settlement."  *Herzog v. McLane Northeast, Inc.*, 999 F. Supp. 274, 276 (N.D.N.Y. 1998).  Accordingly, a claim is only considered "reasonably related" if the conduct complained of "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation omitted).  Accordingly, courts in this Circuit have typically found that "Title VII claims are not reasonably related to ADA claims."  *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 284 (S.D.N.Y. 2001) (collecting cases); *see also Deravin*, 335 F.3d at 202 (noting that where assertion of racial bias is "conceptually distinct" from national-origin discrimination claim, raising the latter "does not automatically suffice to alert the agency" to investigate the former).

Rosado's EEOC charge states that he experienced discrimination and retaliation on the basis of race, ethnicity, and color, in violation of Title VII and parallel state and local statutes. ECF No. 82-41 at 3.  The charge did not link his discrimination and retaliation claims to his disability or medical conditions, nor did he invoke the ADA as a basis for his claims.  *Id*. Therefore, the EEOC was not afforded an opportunity to investigate or mediate those claims.  *Id.* at 2.  Moreover, Rosado first spoke with his superiors regarding his health conditions as early as December 2017, Def. 56.1 ¶¶ 26–34, and has alleged that his dispute with the Port Authority over reasonable accommodations for his work-related stress was ongoing at least as early as April 2018, Rosado Decl. ¶ 29.  Rosado—and his counsel—were certainly on notice of Rosado's potential ADA claim when they filed the charge in September 2018.  ECF No. 82-41 at 2. Finally, Rosado cannot claim the solicitude offered by "loose pleading" where, as here, he filed his EEOC charge through an attorney.  ECF No. 82-41 at 4; *see also Deravin*, 335 F.3d at 203. Therefore, the Port Authority's motion for summary judgment on this claim is GRANTED.

III.   Title VII Claims for Discrimination and Retaliation

Title VII prohibits employment discrimination against an individual on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2003e-3(b).  Such claims are assessed under the three-part burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  A plaintiff must first establish a *prima facie* case of discrimination by showing (1) he is a member of a protected class; (2) he is qualified for the positions he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  *Ruiz v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).  The burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the adverse action.  *Id.*  If the defendant does so, the burden returns

15

to the plaintiff to demonstrate that the real reason for the action was the plaintiff's protected characteristic.  *Id.*

As to Espinoza, construing Plaintiffs' submissions generously, the only factual allegation falling within the limitations period is that Espinoza was written up for being off-post while working overtime at Newark Airport, and because of these pending charges, he has been denied the opportunity to obtain certain postings and attend trainings.  Compl. ¶ 41; Espinoza Tr. at 116–20, 248.  The only basis to infer discriminatory intent behind this disciplinary action is Espinoza's unsworn, inadmissible declaration, which the Court shall not consider.  Espinoza Decl. ¶¶ 17–18.  But, even if the Court were to consider it, the Port Authority has offered a legitimate, non-discriminatory reason for such action—that, as Espinoza admitted during his deposition, he was off-post during his shift at Newark Airport, Espinoza Tr. at 116–20.  Espinoza has adduced no evidence showing that the Port Authority's stated reason for his transfer was a pretext for its allegedly discriminatory motive, and relies merely on conclusory allegations of discrimination.  *See Gill v. Mt. Sinai Hosp.*, 160 F. App'x 43, 44 (2d Cir. 2005).  Thus, Espinoza has failed to show a genuine dispute of material fact as to his Title VII claims.

Similarly, Rosado's only factual allegations falling within the limitations period are that he began experiencing "work related stress" because of the harassment he faced, and the Port Authority discriminated against him by denying his request for desk duty as a reasonable accommodation.  Compl. ¶ 36.  The Court, however, cannot find that Rosado has stated a *prima facie* case under Title VII.  At the outset, although Rosado, who identifies as Hispanic, Pls. 56.1 ¶ 1, is a member of a protected class, the record does not demonstrate that Rosado was "qualified for the position" he held.  In December 2017, Rosado suffered a mental breakdown, was hospitalized, and never returned to work.  Def. 56.1 ¶¶ 34, 37; Rosado Tr. 191–92.  In July 2018,

in support of his request to return to work, Rosado offered a physician's evaluation, which concluded that he was "no longer fit to be a police officer due to his underlying medical [and] psychiatric condition." Def. 56.1 ¶ 39. On this basis, the Port Authority determined that Rosado was not "medically able to perform the full duties of a [p]olice [o]fficer," and HR began a process to "explore the feasibility of a potential reasonable accommodation for his current position." ECF No. 82-23. Rosado failed to contact the HR representative to discuss the matter. Def. 56.1 ¶ 42. Rosado has not adduced admissible evidence that shows he could perform the duties of a Port Authority officer. Nor does he allege that the discrimination he experienced with respect to his medical conditions had anything to do with his ethnicity or national origin. Indeed, the complaint relies on these factual allegations solely to support Rosado's claim of discrimination and retaliation under the ADA, Compl. ¶¶ 101–07, which as the Court has explained, fails for lack of administrative exhaustion.

Because Plaintiffs have failed to carry their burden on their surviving Title VII claims for discrimination and retaliation on the basis of ethnicity and national origin, the Port Authority's motion for summary judgment on these claims is GRANTED.

IV.    <u>Section 1981 Claims</u>

Plaintiffs bring a claim under 42 U.S.C. § 1981, contending that the Port Authority's allegedly discriminatory actions "interfer[ed] with Plaintiffs' rights to the performance and enjoyment of the benefits of their contracts of employment." Compl. ¶¶ 109–16. To establish a claim under § 1981, a plaintiff must make a prima facie case showing that (1) she is a member of a racial minority; (2) the Port Authority intended to discriminate on the basis of race; and (3) the discrimination at issue concerned one of the statute's enumerated activities. *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Because the Port Authority

"stands in the shoes of a municipality" for purposes of a § 1981 claim, *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 540 (2d Cir. 2020), a plaintiff must show that the constitutional injury she experienced was caused by "execution of a custom or policy of the Port Authority[.]" *Raysor v. Port Auth. of N.Y. & N.J.*, 768 F.2d 34 (2d Cir. 1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Holden v. Port Auth. of N.Y. & N.J.*, No. 17 Civ. 2192, 2021 WL 681040, at *7 (S.D.N.Y. Feb. 22, 2021).   In other words, the Port Authority "cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691 (emphasis omitted).   Rather, Plaintiffs must "demonstrate that, through its deliberate conduct, [the Port Authority] was the 'moving force' behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quotation marks and citation omitted).   Plaintiffs must also plead, and ultimately prove, that but for race, they would not have suffered the injury at issue. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

The Port Authority moves for summary judgment on Plaintiffs' § 1981 claim on the ground that Plaintiffs have not shown that the Port Authority had a "policy, custom, or practice" of discrimination against Hispanic officers.   Def. Mem. at 14.   Plaintiffs argue that the Port Authority's denial of desk duty to Rosado, the denial of certain training opportunities to Espinoza, and the lack of procedures for police officers to work in civilian positions, or without firearms, amount to discriminatory customs and practices.[6]   Pls. Opp. at 11–12.   The Court disagrees.

---

[6] Plaintiffs additionally contend, based on precedents from the Ninth Circuit, that "the question of whether a policy or custom exists" is a question for the jury, therefore implying this alone should be sufficient to defeat summary judgment.   Pls. Opp. at 12 (citing *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996)).   But the Ninth Circuit makes clear that "when there are no genuine issues of material fact and the plaintiff has failed to establish a prima facie case," including when the plaintiff "has failed to establish a custom or policy," disposition by summary judgment is appropriate.   *Trevino*, 99 F.3d at 920.

To establish a municipal policy or custom, a plaintiff "need not identify an express rule or regulation." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citation omitted). Rather, a plaintiffs may show that "a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.* (quotation marks and citations omitted). Plaintiffs "cannot infer a policy from the alleged violation of [their] own civil rights," nor is proof of a "single incident" of unconstitutional activity sufficient to impose municipal liability, unless "proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Anderson v. City of New York*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987); *see also Trevino*, 99 F.3d at 918 (finding municipal liability cannot be "predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

Plaintiffs do not allege the existence of a policy permitting discrimination against Hispanic officers. *See generally* Compl.  Nor are Plaintiffs' factual allegations sufficient to support the existence of a discriminatory municipal custom or practice.  Rosado alleges only that the Port Authority denied him a "reasonable accommodation" to work desk duty, and "shunned him" from the benefits of his employment.  Compl. ¶¶ 36–47.  Plaintiffs further allege that the Port Authority "brought false and unverified charges against . . . Plaintiffs which resulted in denial of promotion, training, and other benefits."  *Id.* ¶ 41.  But, the Court cannot infer the existence of a policy from violations of Plaintiffs' civil rights alone, *Anderson*, 657 F. Supp. at 1574, and Plaintiffs do not allege that such practices applied to anyone besides them.  Plaintiffs'

more general allegations as to the lack of procedures for police officers to work in civilian positions or without firearms do not evince discriminatory intent.  There is no indication, for instance, that such a lack of procedures disproportionately affects Hispanic officers or minorities generally.[7]  Moreover, the undisputed facts of this case demonstrate that such a procedure existed—namely, a police officer deemed unfit for full-time service would be referred to HR to participate in an "interactive process" to identify reasonable accommodations for their current position, or alternative placement within the Port Authority—a process Rosado did not take advantage of.  Def. 56.1 ¶ 42.  And, Plaintiffs have not alleged that policies in effect were applied in a discriminatory manner to anyone other than Rosado.  The isolated incidents Plaintiffs describe cannot be said to arise from an established policy or custom of racial discrimination perpetrated by the Port Authority, and are, therefore, insufficient to support *Monell* liability.

Plaintiffs also have not shown that the Port Authority employees they name—including Doris Francis and Vincent DeSimone—are "municipal policymakers" for purposes of *Monell* liability.  Whether the official in question is a final policymaker "is a legal issue to be determined on the basis of state law." *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1349 (2d Cir. 1994).  A plaintiff bears the burden of establishing an official's status as a final policymaker with allegations going to the official's scope of employment and his role within the municipal or corporate organization.  *See Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000).  Plaintiffs do not allege facts which establish that Francis or DeSimone are "municipal policymakers." *See generally* Compl.  Even if, as Rosado alleges, Francis or other Port Authority supervisors had some decision-making authority over his placement and possible accommodations,

---

[7] Plaintiffs raise this as a claim for the first time in their opposition papers.

decisionmaking authority does not equate to policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). And isolated incidents, especially those "involv[ing] only actors below the policy-making level, do[] not suffice to show a municipal policy." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 277 (2d Cir. 2010). Accordingly, the Port Authority's motion for summary judgment on Plaintiffs' § 1981 claim is GRANTED.

## CONCLUSION

For the foregoing reasons, the Port Authority's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate all pending motions, vacate all conferences, and to close the case.

SO ORDERED.

Dated: March 2, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge